Good morning. May it please the Court, my name is Eric Miller and I represent the appellant at CollegeNET. The District Court erred in dismissing the complaint in this case for failure to allege antitrust injury. A plaintiff can establish antitrust injury by alleging that it has suffered an injury of the type that the antitrust laws were intended to prevent. And the complaint in this case does that in two different ways. First, CollegeNET has been injured by Common Application's anti-competitive restraints, which exclude competitors from the market for application processing services. Those restraints take the form of several mutually interlocking and reinforcing policies. Among them are an equal treatment requirement that prohibits colleges from steering applicants to a rival processing service by offering better services or by offering inducements to the applicants, such as scholarships. There's also a tying arrangement whereby colleges that wish to avail themselves of the applicant pipeline provided by Common Application's data service have to also purchase its processing service. And there are financial penalties in the form of a pricing structure that penalizes colleges for non-exclusivity. Those restraints collectively amount to what this court described in Glenn-Hawley as coercive activity that prevents victims from making free choices between market alternatives, and that is a classic antitrust injury. The second form of injury alleged here can be understood by viewing Common Application's activity as facilitating a collusive, monopsonistic cartel among colleges as purchasers of application processing services. The allegation in the complaint is that the colleges, through Common Application, have colluded to offer an applicant experience that is inferior to what they would offer if they were freely competing among each other. And that disadvantages applicants, and it also forces CollegeNET to sell to them at below competitive prices. And that sort of injury of a supplier to a monopsonistic cartel is also a classic antitrust injury. Now, the district court dismissed the complaint here because it essentially made an error in the application of the pleading standard under Iqbal and Twombly, and it misunderstood the nature of the allegations in the complaint. So the crux of the district court's reasoning, and this is set out at pages 16 to 17 of its opinion in the excerpt of record, the district court faulted the complaint for what it characterized as the assumption that applicants do not want to participate in increased application churn. That is to say, in the district court's view, the benefit to applicants should be measured by the sheer number of applications that they're able to put in and should not take account of match quality. Now, the complaint has factual allegations that are exactly contrary to that. What the complaint alleges is that applicants are not interested in submitting applications to colleges for the sake of submitting applications. They're interested in identifying and being accepted at a college that they actually want to go to. And if they can do that in as few applications as possible, they're better off because they spend less time and money applying and find a better match. So that's a factual assertion about what the market is like. That's a factual assertion that we would need to produce some evidence of to survive summary judgment. We would need to prove by preponderance of the evidence at trial. But at the pleading stage, there are factual allegations to that effect in the complaint. And the district court is required to accept those factual allegations as true. And then under Iqbal and Twombly, the question is, taking those factual allegations as true, are there plausible inferences that can be drawn from those allegations that would be consistent with relief? And the answer to that is certainly yes. Counsel, excuse me. Must we consider all the practices in combination, or can we take a look at each one of these allegations and determine whether or not that's deemed anti-competitive by our case law or otherwise? We believe that they are each individually a violation. But the court's analysis should be holistic. That's something that the Supreme Court and this court have held, that you can't disaggregate all of the restraints when you have an entity with market power that is using a number of interrelated restraints to suppress competition. You have to evaluate the effect of all of them together. Well, maybe you could explain to me why it's anti-competitive for TCA to require its member colleges to agree to non-discrimination provisions and uniformity requirements. Sure, and I will address that. I do want to say at the outset that that really goes to the question of whether we have stated a claim, which the district court did not pass upon and we have urged this court not to consider at this stage. The question the district court reached is have we established antitrust injury, and it would be sufficient for this court to hold that the answer to that is yes and remand. What is the antitrust injury then from the non-discrimination provisions and the uniformity requirements? What is the anti-competitive injury there? The injury there is that in the absence of those requirements, a college could, for example, say you can apply to us through the Common App or you can use a different application that would be provided by CollegeNet, and they could offer inducements to use that. They could say we give maybe a lower fee if you use the other application, passing on some of the savings. They could say that you're eligible for scholarships if you use the other provider, but the non-discrimination and uniformity requirements prevent them from doing that. So they are inhibiting CollegeNet from competing with Common Application by offering inducements to schools, and they are also inhibiting competition within or among schools for applicants. That is to say they make it difficult for a college to say to applicants, we have a superior application service. Come apply to us because it's easier or the fee is lower. So they suppress what would otherwise be free competition among schools in the market for applicants. Counsel, I have a question that's very similar to Judge Wardlaw. In this case, if it's all one product, there are different ways you can look at this case. You can look at a pencil, right? This pencil is a pencil, or you can say the eraser is a different product than the lead. There are two ways you can look at that. So in this case, you're arguing that there are multiple products. One of them is just the group of colleges getting together, and another product is the technology or software that's being used. If we were to conclude, and I understand you don't want us to do this, but if we were to conclude it were all one product, what's left of your case? No tying claim. Yeah, if there were no tying claim, and that is a fact. Whether it's one market or two is a classic factual question, and Eastman Kodak says that's a factual question that requires evidentiary proof. But you're aware there are plenty of circuit cases that dismiss or affirm the dismissals on 12B6 saying as a matter of law, no tying. Right. But if you were to get rid of the tying claim, we still have the exclusive dealing claim, and we still have the claim that what's going on here is collusion among colleges as purchasers of services from providers like CollegeNet. So we would still have a monopsonistic collusion claim. We would still have the exclusive dealing claims. So the tying claim is a freestanding claim that we have made, but it is just one of the claims here. Counsel, it would be helpful for me if you could explain how your exclusiveness claim results in antitrust injury, because I understand you're not suggesting that by giving the colleges a $2 discount if they agree to exclusively use the Common App process, that that somehow results in anything below cost. You're making an exclusivity claim that has nothing to do with cost. Is that correct? That is correct. So how does it work in terms of antitrust injury? And I think one of the errors in the district court's opinion is that the district court perceived this as a predatory pricing claim for which proof of below cost pricing would be necessary. But that's not the claim that we're making. We are making the claim that we are being excluded from the market. And so this is not the classic no antitrust injury claims or where you have essentially exclusion of just one competitor through competition on the merits. That's not what we're alleging here. We're alleging that there is a dominant player in the market with a predominant share of the market that is using this arrangement to inhibit competition from us and to prevent us from freely competing with it. So the injury that we are suffering in not being able to or being inhibited in selling to colleges, not because our product is not as good or more expensive, but simply because there is this inducement that the dominant player in the market is offering to keep people from dealing with us, that injury to a competitor is a classic antitrust injury. That is the sort of harm to free competition that the antitrust laws were intended to prevent so that the harm that we suffer from it constitutes antitrust injury. I'm probably going to give you a little more time so you can keep going. But I did have a question also back to tying. If we're talking a per se tying claim, is it your position that let's say we agree with you that a proper per se tying claim is alleged, do you have to, in your view of the law, allege a separate antitrust injury or is per se tying sufficient? No, we still need to show antitrust. I mean, I think a private plaintiff always needs to show antitrust injury, but we have done that for the reasons I've articulated. Counsel, your opponent is really somewhat derisive about your focus, your actual complaint on quality as sort of an element of net output. Sorry. It seems to be your position that it is well-established in antitrust law that, quite apart from the impact on cost price, that if the availability of a better quality product is affected by the antitrust misconduct, if you will, that's enough. A negative impact on quality is enough, quite apart from any price effects of the anticompetitive conduct that you're alleging. Is that your position? Yes, Your Honor. That is our position, and that's what this court has said in cases like Rebel Oil, where the court said that you can show antitrust injury from conduct that, quote, raises the prices of goods above competitive levels or diminishes their quality. It's in Glen Holly, where the court referred to artificially less innovative products, and it's consistent with the common sense economic understanding that it really doesn't make sense to look at nominal prices in isolation from quality, that a decrease in quality is, in an economically meaningful sense, an increase in price. So that's consistent with both economic reality and with the case law. But then why doesn't that, I think the court would say, when you focus on quality, you're really talking about sort of the subjective experience of participants in the marketplace. You're assuming that they're not happy with the sort of churning phenomenon. You send out a whole lot of applications and hope that one of them works, that what they really would like is a process that's perhaps more efficient in the sense that it facilitates better matching between the applicants and the schools. What permits you to make the judgment that that's what participants in the market want, rather than what they're now experiencing? Well, it's not just an assumption on our part. Ultimately, it is a factual question, and it's susceptible to proof by expert economic analysis, and that's something we've alleged at this stage. And to survive summary judgment, it will not be enough for us simply to assert that that's what consumers want. We're going to need economic analysis and data from consumers and expert opinions to support the allegation that we've made. But at this stage, it's an allegation about a fact in the world, consumer preferences, and the district court is required to accept that factual allegation as true. There are no further questions. We'll certainly give you some extra time in rebuttal. Thank you, Aaron. Can you please report? Good morning, counsel. I'm Thane Scott. I'm here on behalf of the Common Application. The Common Application is defending the decision by Judge Hernandez below to dismiss the case based on the absence of antitrust injury. The central question presented for this court is whether the facts alleged, not the conclusions, not the labels, but the facts alleged in the amended complaint establish antitrust injury, not injury to college net, injury to competition. Antitrust injury is a different type of injury than what college net is talking about. There are dozens of cases, including Supreme Court cases, that say the antitrust laws are focused on competition. They are not focused on competitors. The health or well-being of a particular competitor, whether it's the Common Application or college net, is not the focus of the antitrust laws. It is whether competition in the market has been injured. And so it's important to keep the lens focused on what is happening in the market. Is competition improved? Is competition neutral? Or is competition damaged? That is what antitrust injury is, and that is completely different from injury to any particular entity in the marketplace. The antitrust injury doctrine is fundamental antitrust doctrine. It is used to filter out cases that do not point to injury to the competitive system. In particular, it's used to filter out cases brought by competitors who claim they are injured, but, in fact, the competitive system is doing just fine. As Judge Easterbrook said, antitrust injury was created to filter out complaints by competitors who may be hurt by productive efficiencies, higher output, and lower prices, all of which the antitrust laws are designed to encourage. So for this case to go anywhere, first there must be facts which, if proven, would establish that there is injury to the competitive system. And so a focus... Counselor, what I take CollegeNet to be asserting is almost that your client has created like a barrier to entry for new participants in its market, or markets, however they may be defined, which I don't think we go there yet, that your client is using whatever market power it has, also which needs to be proved, to not allow new competitors to enter the market so that it could stay less innovative and not have to have quality control measures and maybe be this massive churned out, overdoing thing that seems to be satisfactory, I guess, for the time being, but points to this whole problem with having only one main college application. Your Honor, I think you have captured the essence of their position as succinctly and fairly as possible. And the answer to that is, if you assume all of that is correct, nevertheless, the antitrust injury doctrine says, before you can go anywhere with a competitor complaint, regardless of the illegality that is alleged, you must first prove that the competitive system has been harmed. And so... Absolutely, Your Honor. It needs facts alleged in the complaint taken as true as we do. All of this is being presented on facts alleged in the complaint. This isn't a factual battle between sides. These are facts that are alleged in the complaint that establish the absence of injury to the competitive system. How do we know the competitive system has not suffered injury of the type the antitrust laws are intended to prevent? We look at what is happening with price in the marketplace, what is alleged to be happening, what is alleged to be happening to output in the marketplace. Those are the traditional benchmark objective metrics with which we assess the health of the competitive system. When we look at the complaint, what do we see alleged as readouts of the health of the competitive system? We see allegations that prices in the market have been driven down by the competitive system. Prices that are driven down below competitive levels, but above predatory levels. Competition is what drives price down, not the absence of competition. So when you look at the price metric, the read that you get is competition is alive and well in this market. CollegeNet pleads that it would like to charge more money and it is not getting traction for its higher priced product in the market. That is not injury from the absence of competition. That is the unwillingness to compete by lowering price in order to please consumers. Price indicators in this market indicate the presence of robust competition. Next we look at output. Is the market being provided with sufficient product or service? And when we look at the allegations in the complaint, we see that this what CollegeNet describes as churn, which is just a label, and the common application describes as educational access. Is in fact happening more and more. And so output, as the complaint alleges, more and more applicants are applying to more and more colleges. And more and more colleges are receiving more and more applicants from students. If the competitive system were injured, output would not be increasing. I just want to quote from paragraph 153 of the complaint. That's the tying allegation, and this is a description of the harm resulting from that tying practice. Have harmed competition in the relevant markets by limiting college choice, limiting the scope of services and price competition available to student applicants, and foreclosing rival providers from capturing colleges and applicants' businesses, thereby reducing the net output by leaving one dominant provider offering inferior products and services. Why is that not an appropriate allegation of antitrust injury resulting from the tying phenomenon? Well, Your Honor, because the baseline for antitrust injury is, as I've described, price and output effects. What is alleged in the complaint, if antitrust injury were being created, would produce negative price and output effects. This complaint alleges positive pro-competitive output and price effects. And therefore, there is no injury to the competitive system. Let me step back for a moment, Judge Lopez. There are case after case after case in which antitrust defendants consummated unlawful mergers, engaged in unlawful tying, engaged in hardcore exclusive dealing arrangements. And yet, if the mechanism for injury that the plaintiff is claiming is lower prices, resulting from this supposed bad merger, or let's take Rebel Oil, a predatory pricing claim, an intent to drive a rival from the market by charging below cost pricing, below production cost pricing. That price effect is an anti-competitive indication that prices are below production costs, eventually they will be going up. The allegation here, however, is quite different, which is prices in the market are going lower and lower and lower, and among the complaints that CollegeNet has is prices in this market are, quote, below competitive levels. Below competitive levels is not an antitrust problem. It is an antitrust triumph. These are not below production costs. These are just prices to consumers that are lower and lower and lower, and CollegeNet doesn't like that. That is not antitrust injury. That is antitrust success. If we broaden the lens... Dr. Ken Jones... You're saying that they are quite wrong in focusing on quality, that the current system diminishes the quality of the application process. It results in a usually inefficient market in the sense that parents are encouraged to send out on behalf of their children as many applications as they can in the hope that something will stick. They're saying, that's a terrible system. If you use our application processing services, we can achieve a more rational match between the applicant and the colleges, and we should be afforded an opportunity to bring that quality to the process that is now lacking. Why is that irrelevant to the antitrust analysis? Well, your Honor, we say that it is both contrary to antitrust injury doctrine to overlay a subjective metric on these traditional objective indications, price and output. And we also say it is presumptuous to override market outcomes based on the subjective preference of a disgruntled rival. And in the case that we submitted with our 28J letter, the energy conversion case, the court found exactly that. That a plaintiff who alleged that it was driven from the marketplace and was in bankruptcy as the result of a cartel that was intended to drive down price and drive the plaintiff from the marketplace. The Sixth Circuit described that as an antitrust triumph. Driving price down is what the antitrust laws are intended to do. And in the Sixth Circuit, the defendant tried to do exactly what CollegeNet is doing here. And they said, well, with our price and output metrics, we need to apply a quality overlay so that we can provide a better indication of what's actually going on in the market. And the Sixth Circuit properly said, as we have urged this court to say, that markets make price quality tradeoffs. Individual consumers in markets get to decide for themselves, do they want to send two applications? Do they want to send 10 applications? Do they want to send three applications? That is not something that courts provide a central planning role. These vendors provide different products and services. One of them has achieved greater success in the market. The amended complaint contains all kinds of factual allegations explaining exactly why that is and the legitimate competitive advantages that the common application holds. The amended complaint also talks about some of these substantive violations that we've explored briefly. But in the end, that doesn't matter. What we need here for a giant antitrust case brought by a disgruntled rival to go forward is first, we need antitrust injury. Antitrust injury means show me where the system, the competitive system, using the traditional objective indicators that courts use, price and output, show me where the system health is degenerating. The complaint does not do that. The complaint instead offers facts that show the competitive health of this market is actually quite good. Price competition is robust. Quality competition is also robust. Consumers pick winners, consumers pick losers. When consumers pick you, it seems like the market is working fine. That's not the case. Consumers and their choices are what determine whether markets are functioning. Consumers determine whether CollegeNet or the common application are providing what the market wants. How do we know whether they are succeeding? We look at objective indicators of price and output. And where those indicators show us this market is working just fine. As the factual allegations of the complaint show, we do what Judge Easterbrook has said. We filter out complaints brought by rivals who are hurt by productive efficiencies, output enhancement, lower prices. And the redress there is not go to court. The redress is compete in the marketplace. Thank you. Case law makes clear that foreclosure of competition is a classic antitrust injury. And that's what's alleged here. Common application wants to focus, have a singular focus on price. But that ignores, as we were discussing earlier, that this court's case has recognized that a diminishment of quality is a harm to competition that constitutes antitrust injury. And it also ignores the specific factual allegations in the complaint that consumers care about quality. Contrary to the common application's view of those allegations, these are not simply our subjective concerns. They're not subjective assessment of what consumers ought to want. They're factual allegations about what consumers do, in fact, want. And in particular, I think it's most clearly laid out at paragraph 68 through 72 of the complaint, which goes through with specific examples of consumers complaining about what they perceive as the lack of choice offered to them by common application. And their dissatisfaction with the quality of the services that they're getting. And that's, again, not simply, not just an assertion. That's something that we're going to have to prove. And we're going to have to submit evidence and expert analysis of the market to show that that is the appropriate way to evaluate output in the market. The premise of many of common application's arguments on that point are, essentially, that the regime that now prevails in the market is just the result of free competition. And, therefore, we shouldn't be complaining about it because we're suffering from competition. And that's not antitrust injury. But, of course, the allegations in the complaint are that the regime currently prevailing is not the product of free competition. What we have alleged is that free choice by applicants is imperiled by the abuse of common application's monopoly power in an effort to eliminate competition. So we're not complaining about the free working of the market. We're complaining about their unlawful interference with the working of the market. Finally, I'd just very briefly like to address the Sixth Circuit case that was cited in the 28th Jail Order. That was a predatory pricing case. So the allegation there was that the plaintiff was being undercut by lower priced sales from the defendants. And the court said correctly that to make out a predatory pricing claim or to show injury from predatory pricing, you have to show that the sale is below cost. The district court misperceived this as a predatory pricing case, but it's not. It's a complaint about a series of unlawful restraints on competition. And for the reasons I've said, we have shown that the harm that we are suffering is harm to competition and therefore antitrust injury. If there are no further questions, we ask that the judgment be reversed. Thank you very much, counsel.
judges: Lipez, Wardlaw, Owens